STATE OF MAINE                                      SUPERIOR COURT
                                                       CIVIL ACTION
YORK, ss.                                      DOCKET NO. AP-06-038
                                               GAP - . ... ' . O.J.07

VICKIE MILLS,

          Plaintiff

    v.                                                ORDER

INHABITANTS OF TOWN OF ELIOT,

          Defendants

     This matter comes before the Court on Vickie L. Mills' 80B appeal of administrative action taken by the Town of Eliot. Following hearing, the appeal is Denied.

## BACKGROUND

     Plaintiff Vickie L. Mills ("Mills") resides at 42 Old Farm Lane in Eliot, Maine. Her property abuts property owned by the Bullis and Cullen Defendants. In 2000, KBM Builders, Inc. ("KBM"), which is run by William Cullen and Anthony Bullis, attempted to obtain approval for a subdivision with 14 lots off of Old Farm Lane. The stated purpose of the subdivision was to provide a "common home for the large Cullen/Bullis family" and to contribute funds to "the education of Cullen's granddaughters (Bullis' daughters)." Defendants' 80B Brief, p. 2.

     The Eliot Planning Board ("the Board") denied that request in September 2000 because the plan did not provide two access roads, as required by a Town ordinance. In May 2001, however, the Town's Code Enforcement Officer ("CEO") approved a similar

subdivision plan submitted by KBM. That plan provided for a "family subdivision" of 13 lots to be used exclusively by the Cullen and Bullis families. The CEO's decision was uncontested.[1] Cullen then bought the property from KBM to create the subdivision and made gifts of all the parcels to various members of the Bullis and Cullen. Bullis now maintains a residence in the subdivision, and the Town has issued two other building permits to his relatives. One of those permits is at issue here.

In April 2006, the CEO approved James Cullen's permit to build a single-family home on one of the lots. Mills, who not only abuts the subdivision but also shares a right of way with it, timely appealed this decision to the Zoning Board of Appeals ("ZBA"). The ZBA held a hearing on June 15, 2006, at which it entertained substantial discussion regarding the family subdivision. The bulk of the hearing focused on whether Mills could appeal the 2000 decision, and whether family subdivisions generally are permissible. Mills argued before the ZBA that the families were trying to evade subdivision review by gifting the lots to relatives. The Bullis and Cullen families responded that their intent simply was to keep the land in the family and allow family members to build separate homes on it.

At the meeting, the ZBA voted on and adopted findings of fact and conclusions of law, specifically finding that the CEO did not act in a manner that was "clearly contrary" to the statutory requirements when he approved the 2006 building permit. The ZBA determined that it could not reconsider the CEO's 2001 subdivision approval because no one had appealed it at that time. Mills then filed this 80B appeal in July 2006.

---

[1] The subdivision plan was recorded in 2001 in the York County Registry of Deeds at Deed Book 262, Page 50.

## DISCUSSION

1. Standard of Review.

Review of the board's findings is "for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." *O'Toole v. City of Portland*, 2004 ME 130, ¶8, 865 A.2d 555, 558. This Court is "limited to determining whether the record contains evidence to justify the Board's determination." *Lewis v. Maine Coast Artists*, 2001 ME 75, ¶14, 770 A.2d 644, 650. The party appealing a board's decision bears the burden of persuasion. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1996).

2. Did the ZBA Correctly Determine That the 2006 Permit Was Validly Issued?

Mills contests the 2006 permit issued to Cullen on the basis that the subdivision should never have been allowed. She does not contend that Cullen failed to meet the criteria to obtain a permit. Cullen argues that the ZBA correctly determined that his permit was validly issued, and that Mills may not collaterally attack the 2001 subdivision approval.[2]

a. Ability to Appeal the CEO's 2001 Subdivision Approval.

First, this Court must address the timeliness of Mills' contention that the subdivision was illegal when it was created in 2001. By way of background, the lots at issue here may be described as a "family subdivision." Maine law provides that property transfers between relatives are not subject to the requirements that regular subdivisions are, so long as they meet certain criteria. *See* 30-A M.R.S.A. § 4401(4)(D-4) (2005). This provision is sometimes referred to as a "family subdivision" and reads as follows:

---

[2] The other Defendants also request to be dismissed from this action, as they have no property interest in Cullen's 2006 permit. All Defendants except Cullen and the Town are dismissed.

3

A division accomplished by gift to a person related to the donor of an interest in property held by the donor for a continuous period of 5 years prior to the division by gift does not create a lot or lots for the purposes of this definition, unless the intent of the transferor is to avoid the objectives of this subchapter [regarding subdivision approval].

*Id.*[3] Thus, a "family subdivision" is not technically a subdivision that goes through the typical approval process. Here, Mills argues that the family subdivision was illegally created in 2001 because the Bullis and Cullen families intended to evade the subdivision review process by gifting lots to each other after the Board previously rejected a similar iteration of their plan.

Intent to evade subdivision standards is a factual determination subject to deferential review. *Tinsman v. Town of Falmouth*, 2004 ME 2, ¶ 12, 840 A.2d 100, 103. The ZBA did not make an explicit factual finding that the Bullis and Cullen families intended to evade the normal review process by gifting lots to each other. Indeed, it heard a great deal of testimony to the effect that the families' intent was to keep the land in the family and to provide a common home for the various relatives, not to evade statutory requirements. The ZBA credited this testimony[4], and this Court concludes that it did not abuse its discretion when it failed to find an intent to circumvent the law on the part of the families.[5]

Returning to the timeliness issue, Mills did not appeal the CEO's 2001 decision within thirty days[6], although she would have had standing to bring such an appeal as

---

[3]     In 2001, the legislature extended this period to 10 years.

[4]     See 6/15/06 Meeting Minutes, Page 7, Lines 325-330.

[5]     Mills relies on *Tinsman*, where the Law Court upheld a board's finding that the plaintiff intentionally avoided review. 2004 ME 2, ¶ 12, 840 A.2d at 104. There, however, one of the persuasive factors was that the plaintiff admitted to the board that some of his property transfers were meant to evade subdivision review. *Id.*

[6]     The Town's ordinance provides the thirty-day deadline, running from the date of the written decision. *See* Ordinance § 18.8.3.1.

4

an abutter. *See Sproul v. Town of Boothbay Harbor*, 2000 ME 30, ¶ 6, 746 A.2d 368, 371 (where the appellant is an abutter, he or she "need only allege 'a potential for particularized injury' to satisfy the standing requirement"). She explains her failure to contest the subdivision in 2001 by contending that the Town did not notify her of the decision. Also, she claims that she was not aware of the process and assumed the CEO and builders would address it. No Maine decisions address whether a CEO is required to inform an abutter of another party's subdivision approval.

Nevertheless, it may be inferred that such notice is not required, as the Town would not have to notify an abutter if a building permit was issued. *See Viles v. Town of Embden*, 2006 ME 107, ¶ 12, 905 A.2d 298, 302. Because notice is not required and abutters may be affected, the Law Court has provided that the time for appeal of a permit may be extended when there is "good cause" for the extension, without which there would be "a flagrant miscarriage of justice." *Keating v. Zoning Board of Appeals of Saco*, 325 A.2d 521, 524 (Me. 1974).

In *Viles*, the Law Court discussed factors bearing on the applicability of the "good cause" exception to deadlines for appeal. 2006 ME 107, ¶ 11, 905 A.2d at 301. The factors include "whether the appellant received notice," the length of time between issuance of the permit and appeal, "whether the municipality violated its own ordinance," and "whether the permit holder violated the terms of the permit." *Id.* ¶ 13, 905 A.2d at 302. Applying those factors and reviewing the determination for abuse of discretion, the Law Court upheld the trial court's decision that there was good cause for the plaintiff's eight-month delay in appealing a neighbor's building permit. *Id.* ¶ 18, 905 A.2d at 303.

Here, Mills did not receive actual notice, although the Town likely was not required to notify her. She did, however, have constructive notice, as the subdivision

5

plan was recorded in the York County Registry of Deeds. *See Sickney v. City of Saco,* 2001 ME 69, ¶¶ 45-47, 770 A.2d 592, 608 (holding that recordation of an easement put property owners on notice of its existence). Mills also waited until another permit was issued five years later to challenge the subdivision, even though development was already occurring – a far greater span of time than the eight-month delay in *Viles.*[7] There is no evidence that the Bullis or Cullen families violated the terms of their permits.

The remaining issue is whether the Town violated its ordinance, which requires two access roads, when the CEO approved a plan with only one access road. The ZBA determined that the CEO did not act in a way that was "clearly contrary" to the ordinance or relevant statutes at the time that the initial plan was approved. This Court should defer to that determination. A "flagrant miscarriage of justice" will not occur, consequently, the deadline for appeal should not be extended and Mills may not raise a belated challenge to the existence of the subdivision.

    b.    Validity of the 2006 Permit.

The Town's Ordinance provides that the ZBA can correct or overturn the CEO's actions "only upon a finding that the decision is clearly contrary to specific provisions" of the Code. Ordinance § 45-49(a). Applying this standard, the ZBA determined that the CEO did not act in a fashion that clearly contradicted the Ordinance. The ZBA did note that the family subdivision issue was a complicated one, but because James Cullen's single-family home would be within the subdivision, it was not subject to the Town's approval. By a vote of 3 to 0, with one member abstaining, the ZBA voted to

---

[7]    Mills contends that she may challenge the subdivision because the subdivision statute exempts from challenge only certain subdivisions, including those in existence for 20 years or more. 30-A M.R.S.A. § 4402(5) (2006). This provision does not apply because it pertains to regular subdivisions, not intra-family transfers such as this.

deny the appeal. Mills has focused her argument on the validity of the underlying subdivision rather than on the specific permit that she has standing to challenge.[8] As the ZBA upheld its CEO's actions, absent an abuse of discretion, this Court should not disturb the ZBA's decision.

## CONCLUSION

This Court affirms the ZBA's decision and denies the appeal.


Dated:        May 3 , 2007

G. Arthur Brennan
Justice, Superior Court

PLAINTIFF:
VICKIE L. MILLS
PO BOX 169
ELIOT ME   03903

DEFENDANT: TOWN OF ELIOT
CHRISTOPHER L. VANIOTIS ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME   04104-5029

ALL DEFENDANTS EXCEPT TOWN OF ELIOT :

DURWARD W PARKINSON ESQ
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043-6658

SANFORD ROBERTS ESQ
SHAHEEN & GORDON
PO BOX 4608
PORTSMOUTH NH   03802-4608

---

[8]     The Law Court faced a similar situation when an abutter primarily focused on "allegations of prior illegal land transactions" when contesting subdivision approval. *Tremblay v. Land Use Regulation Commission*, 2005 ME 110, ¶ 10, 883 A.2d 901, 903-904. In *Tremblay*, the Court affirmed a finding that an intra-family transferor did not act with the intent to evade subdivision regulations, which the Commission had based on its ten-year awareness of the transactions. *Id.* ¶ 17, 883 A.2d at 905-906.