STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-16-34


517 OCEAN HOUSE LLC,

                 Plaintiff

v.                                                ORDER


STATE OF MAINE
Cumberland ss. Clerk's Office

APR 27 2017

RECEIVED

TOWN OF CAPE ELIZABETH, et al,

                 Defendants


Before the court is a second Rule 80B appeal by 517 Ocean House LLC from a decision of the Cape Elizabeth Planning Board approving a site plan application by party in interest 541 Ocean House Road LLC.

541 Ocean House originally sought site plan approval for a pizza restaurant, retail space, and a landscaping business on Ocean House Road in Cape Elizabeth in April 2015. The retail space and landscaping business are pre-existing, but in addition to adding the restaurant, the application involved alterations to the site by modifying the existing parking area and creating a patio n and landscaped area in front of the proposed restaurant.

The 541 Ocean House application was approved by the Cape Elizabeth Planning Board on May 19, 2015. 517 Ocean House LLC, the owner and operator of a restaurant (Rudy's on the Cape) located a short distance north on Ocean House Road,[1] filed a Rule 80B appeal from that decision. AP-15-22.

In an order dated May 10, 2016 and filed May 11, 2016 in AP-15-22 the court rejected a number of the arguments raised by Rudy's but remanded the case to the Planning Board for further findings on three issues:

---

[1] For the sake of clarity, plaintiff 517 Ocean House will be referred to as Rudy's in this order.

(1) whether the lighting is adequate for safety without excessive illumination and whether the light fixtures are shielded;

(2) whether the plantings between the road and the parking area will obscure the view of parked cars and parking areas; and

(3) whether the existing stormwater management system, with the modifications proposed by 541 Ocean House Road LLC and revision of the plan in conformity with paragraph 4 of the Town Engineer's letter, meets the approval standard in Ordinance § 19-9-5(D).

The Planning Board considered the issues in the court's remand order at a meeting on June 21, 2016. At a subsequent meeting on July 19, 2016 the Board reviewed and acted on 16 motions setting forth findings on the remanded issues. R-2 Tab 30.[2]

Rudy's filed this second Rule 80B appeal on August 17, 2016. Because of difficulty in serving several of the parties in interest, the briefing schedule was twice extended, and Rudy's filed its initial brief on November 17, 2016. The Town then obtained a short extension and filed its responding brief on January 3, 2017. A reply brief was filed on January 17, 2017, but the court did not receive the file from the clerk's office and take the case under advisement until February 15, 2017.

Standard of Review

As stated in the May 10, 2016 order in AP-15-22, a municipal decision may be overturned under Rule 80B for an abuse of discretion, an error of law, or findings not supported by substantial evidence. *E.g., Camp v. Town of Shapleigh*, 2008 ME 53 ¶ 9, 943 A.2d 595. Substantial evidence is evidence that a reasonable mind would accept as sufficient to form a conclusion even if the evidence would also support a contrary conclusion. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30 ¶ 8, 746 A.2d 368. In contrast, where an appeal from a municipal

---

[2] The record in AP-15-22 forms a portion of the record in this case. References to R-1 refer to the record on the previous appeal. References to R-2 refer to the record of proceedings on remand.

decision turns on the meaning of statutes, regulations, or municipal ordinances, the interpretation by municipal officials is subject to *de novo* judicial review. *Coker v. City of Lewiston*, 1998 ME 93 ¶ 6, 710 A.2d 909; *Isis Development LLC v. Town of Wells*, 2003 ME 149 ¶ 3 n.4, 836 A.2d 1285.[3]

A discussion of the overall site plan application filed by 541 Ocean House Road is contained in the court's May 10, 2016 order and is incorporated by reference.

### 1. Lighting

There are three issues in dispute with respect to the Planning Board's remand decision on lighting. The first is whether there is evidence to support the Board's finding that there was adequate lighting for safety purposes behind Building # 3. Section 19-9-5(M) of the Cape Elizabeth Zoning Ordinance provides in pertinent part that the proposed development "shall provide for adequate exterior lighting to provide for the safe use of the development in nighttime hours, if such use is contemplated." R-1 Tab 15 p. 238.

The Planning Board found that there was no exterior lighting in the parking lot behind Building # 3 but noted that the lot will be gated, will not be used by the public, and will be used only by employees of the landscaping business. R-2 Tab 30 p. 3. However, the ordinance does not limit the requirement that lighting be adequate for safety purposes only to areas open to the public. The adequate lighting requirement applies equally to areas used by the public and to parking areas used only by employees. There is no finding – and no evidence in the record – that employees of the landscaping business will only park behind Building # 3 during daylight hours. There is also no finding that despite Building #3's absence of exterior lighting, there is sufficient

---

[3] Rudy's has also included a declaratory judgment claim in its complaint but did not file a motion to specify the future course of proceedings as required by Rule 80B(i). For that reason and because the declaratory judgment claim is duplicative of the Rule 80B appeal, the declaratory judgment claim is dismissed. *See Kane v. Commissioner of Health and Human Services*, 2008 ME 185 ¶¶ 31-32, 960 A.2d 1196.

3

light from other sources to safely illuminate the parking area behind Building # 3.[4] Accordingly, substantial evidence is lacking to support the Board's finding on remand on this issue.

The second disputed issue with respect to lighting is the contention by Rudy's that the Planning Board did not make a finding that direct or indirect illumination "shall not exceed 0.5 footcandles at the lot line or upon abutting residential properties." Ordinance Section 19-9-5(M). However, this was not an issue on which the court ordered a remand. In its May 10, 2016 order the court in fact found that the record was sufficient to demonstrate that the Board had made sufficient findings that there would be no illumination on adjacent properties and that a more detailed lighting submission was not necessary. R-2 Tab 19 p. 6. Moreover, a Planning Board's factual findings as to whether an ordinance standard has been met are entitled to substantial deference. *Rudolph v. Golick,* 2010 ME 106 ¶ 8, 8 A.3d 684.

The third disputed issue is whether there is sufficient evidence to support the Board's finding that the 541 Ocean House Road application complied with the ordinance requirement that "lighting fixtures shall be shielded or hooded so that the lighting fixtures are not exposed to normal view by motorists, pedestrians, or from adjacent dwellings and so that they do not unnecessarily light the night sky." Ordinance Section 19-9-5(M). On this issue the Board found that lighting shall be adequately shielded by existing buildings, existing and proposed fencing and existing and proposed plantings. R-2 Tab 30 at 3-4.

Rudy's argues that it is not permissible to find that lighting is adequately shielded by existing buildings because the ordinance requires shielding "from adjacent dwellings." The court does not accept the interpretation proffered by Rudy's because there is a difference between a "building" and a "dwelling." Accordingly, the Board was entitled to find that the existing

---

[4] To the extent that the Planning Board also relied on the fact that the Town Engineer had not raised any issues regarding lighting (R-2 Tab 30 p. 3), the absence of any mention of lighting in the comments submitted by the Town Engineer does not constitute affirmative evidence that lighting behind Building # 3 will be adequate.

4

buildings on the site, along with existing and proposed fencing and plantings, adequately shielded the lighting from motorists, pedestrians, and adjacent dwellings.[5]

However, the Board did not make the necessary finding that the lighting fixtures are sufficiently shielded so that they "do not unnecessarily light the night sky."

2. Screening

The second issue on which the court remanded for further findings involved the issue of screening. The zoning ordinance contains a design requirement that a landscaped area shall be provided in the front set back between the road and the parking lot and "shall include plantings of a size sufficient to obscure the view of parked cars and parking lots from the sidewalk and transitioning to a lesser height." Ordinance § 19-6-5(E)(g)(2).

Rudy's argument here is two-fold. First, it notes that the Board's findings focus on screening between the street and the parking lot, not the area between the sidewalk and the parking lot, although the ordinance requires that there be plantings to obscure the view of the parking lots "from the sidewalk." Second, it argues that the Board's finding that there is adequate screening between the street and the sidewalk cannot stand because the record demonstrates that parked cars will be visible from the street.

On the first issue Rudy's is correct. The Board's findings on remand focused on screening between the street and the parking lot, probably because the court's remand referred to "whether the plantings between the road and the parking area will obscure the view of parked cars and parking areas." R-2 Tab 19 p. 14. However, the area between the road and the parking areas in this case also includes the proposed sidewalk. See R-1 Tab 18 Sheet 8 of 8 ("Landscape Plan"). The ordinance requires plantings obscuring the view of the parking area from the sidewalk, and the existing plan does not show any plantings other than some mulch and perennials between the sidewalk and the parking area. Id. On this issue the Board did not make

---

[5] The location of the dwellings adjacent to the site – and the proposed or existing buffers between the development and those dwellings – is discussed in the May 10, 2016 order. R-2 Tab 19 p. 8.

5

the necessary finding, and there is no evidence from which the court can infer that the view of the parking area from the sidewalk will be obscured.

The court does not agree with Rudy's argument, however, that the ordinance requirement that the view of parked cars and parking lots be "obscured" requires that parking area be hidden from the street or the sidewalk. In this context "to obscure" means "to make indistinct." Plantings that are sufficient to prevent pedestrians from viewing "an expanse of gravel or asphalt parking [that] can appear barren and hostile", in the words of the ordinance,[6] will be sufficient.

3. Stormwater

The third issue on which the court remanded for findings was whether the existing stormwater management system, with the modifications proposed by 541 Ocean House Road LLC and revision of the plan in conformity with paragraph 4 of the Town Engineer's letter, meets the approval standard in Ordinance § 19-9-5(D). On remand the Board made a number of findings on this issue that may be found at R-2 Tab 30 pp. 5-9.

The primary challenge made by Rudy's is based on the ordinance's requirement that "for major developments, stormwater runoff systems will detain or retain water such that the rate of flow from the site does not exceed the predevelopment rate." Ordinance § 19-9-5(D)(2) (emphasis added). Rudy's argues that the "predevelopment rate" means the rate of runoff prior to the approval of the existing landscaping and retail businesses on the site (which Rudy's contends occurred in 1988) and not the flow from the site as it existed in 2015 – immediately before the pending site plan application was filed.

The Town notes that Rudy's never raised this argument before the Planning Board. Assuming this issue has not been waived, the court agrees with the Town that the purpose of the stormwater standards is to prevent new development from worsening any existing runoff problems and that it would be impractical to require retroactive consideration of the site as it may have existed in its natural state before any prior structures or infrastructure were placed. The first

---

[6] Ordinance § 19-6-5(E)(g)(2).

6

sentence of the Cape Elizabeth Ordinance Site Plan Approval Standards states that "the plan for the development will reflect the natural capabilities of the site to support development," Ordinance § 19-9-5(A) (emphasis added), and numerous succeeding sections also refer to the "development" as the project under consideration. E.g., Ordinance §§ 19-9-5(B)(1) & (2), 19-9-5(F), 19-9-5(G), 19-9-5(H), 19-9-5(K), 19-9-5(M), 19-9-5(N). Finally, the sentence in § 19-9-5(D)(2) on which Rudy's relies applies to "major developments." Under these circumstances the reference in the stormwater standard to the "predevelopment" runoff rate means the rate as it existed before the proposed project for which a site plan application is pending.

The court concludes that the Board on remand made the necessary findings that the stormwater management system meets the approval standard in the ordinance. The record unequivocally demonstrates that the impervious surface of the site will be reduced by the proposed development. The court concludes that Rudy's challenge to the Board's stormwater findings on remand is without merit.

Conclusion

For the reasons set forth above, the court concludes that on several issues the Planning Board on remand has made the necessary findings but on several issues a further remand for required findings is necessary as set forth below. In its discretion the Planning Board may, if necessary, add further conditions to its approval or take further evidence on the issues that have been remanded.. *See Hutchinson v. Cary Plantation,* 2000 ME 129 ¶ 15, 755 A.2d 595. If additional evidence is submitted, the Board may if necessary hold a further hearing limited to the issues on remand.

The court understands that Rudy's appeals may appear to the Planning Board to be an attempt by an existing business to delay or stifle a future competitor. Rudy's appeals also appear to stem from a perception that its own site plan application was subjected to unequal treatment. The court addressed that argument in its May 10, 2016 order and incorporates that discussion by reference. As set forth above and in the May 10, 2016 order, many of Rudy's challenges are

7

without merit. Nevertheless, Rudy's is entitled to have all the necessary findings made and supported by substantial evidence before 541 Ocean House Road's site plan application is approved.

The entry shall be:

1. For the reasons stated above, the case is remanded to the Cape Elizabeth Planning Board for further findings and if necessary, the addition of further conditions or the taking of additional evidence as to

(1) whether the lighting is adequate for safety in the parking area behind Building # 3 in nighttime hours, if such use is contemplated;

(2) whether the light fixtures are sufficiently shielded so that they do not unnecessarily light the night sky; and

(3) whether the plantings between the sidewalk and the parking area will obscure the view of parked cars and parking areas from the sidewalk.

2. In all other respects the May 19, 2015 decision of the Cape Elizabeth Planning Board – with the additional findings made on July 19, 2016 – is affirmed.

3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: April 27, 2017

Thomas D. Warren
Justice, Superior Court

8

PII Nicholas Tammaro
PII 541 Ocean House Rd LLC
Michael Vaillancourt Esq
PO Box 2412
So. Portland ME 04116-2412

Pro Se
Jennifer Feeney
14 Hannaford Cove Rd
Cape Elizabeth ME 04107

Pro Se
Sheldon Goldman
50 Cushman Rd
Scarsdale NY 10583

Def
John J Wall Esq
Monaghan Leahy
PO Box 7046
Portland ME 04112-7046

Pltf
Peggy McGehee Esq
Perkins Thompson PA
PO Box 426
Portland ME 04112